IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARY KATHERINE GAYNIER, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Case No. 3:16-CV-2314-D-BK |
| | § | |
| ANTONIO HUDSON, | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMEDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to District Judge Fitzwater's *Order of Reference*, Doc. 38, and 28 U.S.C. § 636(b)(1)(B), *The Defendant's Motion for Summary Judgment Based Upon Qualified Immunity*, Doc. 35, was referred to the magistrate judge for findings of fact and a recommended disposition. For the reasons that follow, the motion should be **GRANTED**.

**A. Procedural History**

This action, brought pursuant to 42 U.S.C. § 1983, was filed by *pro se* Plaintiff Mary Katherine Gaynier and arises out of the shooting death of her son, Andrew Scott Gaynier ("Gaynier"), by Defendant Antonio Hudson, a City of Dallas police officer. Doc. 30. Following extensive motion practice, all claims were dismissed against all defendants except Plaintiff's claim against Defendant Hudson in his individual capacity for the use of excessive force in violation of the Fourth Amendment. Doc. 23; Doc. 24; Doc. 41; Doc. 43. Defendant Hudson moves for summary judgment on that claim. Doc. 35. Plaintiff did not file a response.

**B. Uncontested Summary Judgment Evidence**

In August 2014, Defendant Hudson was patrolling in a marked police car when he received two calls from a nearby resident. Doc. 37-1 at 1. The caller reported that an intoxicated man, who was later identified as Gaynier, had confronted her grown daughter in her front yard and reduced her

to tears.[1] Doc. 37-1 at 1 (Hudson First Affidavit). The caller described Gaynier as a white male with short hair, wearing a green t-shirt and a backpack. Doc. 37-1 at 1. Defendant Hudson drove in the direction of the call and eventually saw a suspect who matched that description. Doc. 37-1 at 1. Defendant Hudson informed the dispatcher of his location and he pursued the suspect, Gaynier. Doc. 37-1 at 1. When Defendant Hudson came closer to Gaynier, he saw that Gaynier appeared to be angry and under the influence of drugs. Doc. 37-1 at 2. Defendant Hudson then directed Gaynier to place his hands on the front of the patrol car, but Gaynier did not comply, and instead cursed and began walking away. Doc. 37-1 at 2. Defendant Hudson repeatedly told Gaynier to place his hands on the patrol car, but Gaynier refused, saying "26 years is a long time," and "shoot shoot shoot shoot shoot." Doc. 37-1 at 2.

Gaynier then sprinted away from Defendant Hudson, dropping his backpack as he ran. Doc. 37-1 at 2. Defendant Hudson informed dispatch that Gaynier was running westbound and appeared to be high. Doc. 37-1 at 2. Defendant Hudson then followed Gaynier in his car from a short distance and waited for back up officers to arrive. Doc. 37-1 at 2. As Defendant Hudson followed, he saw a gray minivan turning and heading toward Gaynier. Doc. 37-1 at 2. Gaynier grabbed the driver's door handle and tried to pull it open, running alongside the minivan as it moved. Doc. 37-1 at 2; Doc. 37-1 at 7 (Surveillance Camera Video). Defendant Hudson exited his patrol car with his gun drawn and saw that there was an adult passenger and possibly a small child inside the minivan. Doc. 37-1 at 2, 7. Defendant Hudson thought he heard Gaynier say something like "open up" to the minivan occupants and believed Gaynier was trying to force his way into the vehicle. Doc. 37-1 at 2. Defendant Hudson then yelled at Gaynier to get on the ground and show his hands while he aimed his

---

[1] In the meantime, a different person also had called the police, stating that a man who matched Gaynier's description was walking up and down the street making lewd comments. Doc. 37-1 at 8 (Silva Affidavit.).

2

gun at Gaynier. Doc. 37-1 at 2-3, 7. Gaynier said something to the effect of "I'm taking this f***ing thing," and again reached for the door handle of the minivan, which pulled away while Defendant Hudson continued to yell commands to Gaynier to get on the ground. Doc. 37-1 at 3, 5, 7.

Gaynier, however, turned toward Defendant Hudson, said something unintelligible, and then "charged" directly at Defendant Hudson. Doc. 37-1 at 3, 7. Defendant Hudson was in immediate fear that Gaynier was going to try to take his gun away from him, so he backpedaled away from Gaynier in an attempt to create distance between them, but Gaynier was approaching more quickly than he could retreat. Doc. 37-1 at 3, 7. Still backpedaling, Defendant Hudson fired four times at Gaynier, striking him and causing him to fall to the ground. Doc. 37-1 at 3, 7. Gaynier was walking quickly and was only a few feet from Defendant Hudson when Defendant Hudson fired his gun. Doc. 37-1 at 3, 7. Defendant Hudson informed the police dispatcher that he had shot Gaynier and requested an ambulance. Doc. 37-1 at 3. Defendant Hudson then rendered first aid to Gaynier, but he did not survive. Doc. 37-1 at 3. A video of the events, leading up to and including the shooting, was recorded by a residential surveillance camera and supports Defendant Hudson's account of the incident. Doc. 37-1 at 7.

## C. Applicable Law

### 1. Summary Judgment Standard

If a party does not file a response to a summary judgment motion, the court is not permitted to enter a "default" summary judgment. *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988). The court is, however, permitted to accept the movant's facts as undisputed when no opposition is filed. *Id.* Further, a summary judgment non-movant who does not respond to the motion is relegated to his unsworn pleadings, which do not constitute competent summary judgment evidence. *Assoc. of Taxicab Op, USA v. Yellow Checker Cab Co. of Dallas/Fort Worth, Inc.*, 910 F. Supp. 2d 971, 975

(N.D. Tex. 2012) (Godbey, J.) (citing *United States v. Dallas Area Rapid Transit*, 96 F.3d 1445 (5th Cir. 1996)); *see also Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991) (stating that the allegations in the plaintiff's unsworn complaint were insufficient to defeat summary judgment). Plaintiff's pleadings are not verified and, therefore, she has presented no summary judgment evidence. Accordingly, the Court accepts Defendant Hudson's evidence and facts as undisputed.

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). A dispute regarding a material fact is "genuine . . . if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence showing the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* at 587.

   2. *Section 1983 and Qualified Immunity*

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United

4

States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under section 1983, Plaintiff must allege facts that show that he has been deprived of a right secured by the Constitution and the laws of the United States, and the defendants were acting under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted). The qualified immunity inquiry involves two prongs that the Court must answer affirmatively before an official is subject to liability: (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right and (2) whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Pearson*, 555 U.S. at 232. A court may begin its assessment with either prong. *Id.* at 236 (*overruling in part Saucier v. Katz*, 533 U.S. 194 (2001)).

### 3. Fourth Amendment

In the course of a detention or arrest, the right to be free from the use of excessive force − whether deadly or not − is governed by the Fourth Amendment's "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 394 (1989). To prevail on such a claim, a plaintiff must demonstrate "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (per curiam) (quotations and citation omitted). Deadly force is considered reasonable when an officer has probable cause to believe that the suspect poses an imminent threat of serious physical harm to the officer or others. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citation omitted). Further, the determination of reasonableness "must embody allowance for the fact that police officers are often forced to make split-second judgments − in circumstances that are tense, uncertain, and rapidly evolving − about the amount of force that is necessary in a particular situation." *Id.* at 396-97. Such claims "require[ ] careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396 (citation omitted). "An officer's use of deadly force is presumptively reasonable when the officer has reason to believe that the suspect poses a threat of serious harm to the officer or to others." *Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 382 (5th Cir. 2009) (citation omitted).

**D.  Analysis**

Plaintiff has not successfully made out a violation of Gaynier's Fourth Amendment rights as required to overcome Defendant Hudson's qualified immunity defense. *Pearson*, 555 U.S. at 232. Indeed, the undisputed evidence in the record demonstrates the objective reasonableness of Defendant Hudson's use of deadly force and could not lead a rational trier of fact to find for Plaintiff. *Matsushita*, 475 U.S. at 586. Specifically, Defendant Hudson first received information that Gaynier was acting erratically and making offensive remarks to other people. Doc. 37-1 at 1. When he arrived on the scene, Defendant Hudson saw that Gaynier looked angry and appeared to be on drugs or mentally ill. Doc. 37-1 at 2. Gaynier ignored all of Defendant Hudson's commands and walked away from him. Doc. 37-1 at 2. Gaynier also cursed and made nonsensical statements and then repeatedly attempted to carjack a minivan. Doc. 37-1 at 2-3. When the minivan pulled away,

Gaynier rushed directly at Defendant Hudson, who could not back up fast enough to retreat. Doc. 37-1 at 3, 7.

Defendant Hudson's use of deadly force was objectively and clearly reasonable because he had probable cause to believe that Gaynier posed an imminent threat of serious physical harm to him. *Garner*, 471 U.S. at 11. As established by the evidence, Defendant Hudson was forced to make a split-second judgment and reasonably feared that Gaynier, who was behaving erratically and appeared to be on drugs, was going to try to take his gun from him. *Graham*, 490 U.S. at 396-97. The situation was palpably tense and the events leading directly up to the moment before the shooting unfolded very quickly, posing an immediate threat and leaving Defendant Hudson with virtually no choice but to fire his weapon. *Id.* at 396-97. Plaintiff has not provided any evidence to the contrary. Because Plaintiff has not established a violation of Gaynier's Fourth Amendment rights, Defendant Hudson is entitled to summary judgment. *Pearson*, 555 U.S. at 232; *Matsushita*, 475 U.S. at 586.

**E.  Conclusion**

For the foregoing reasons, *The Defendant's Motion for Summary Judgment Based Upon Qualified Immunity*, Doc. 35, should be **GRANTED**. Upon acceptance of this recommendation, the Clerk of the Court should be directed to close this case.

**SO RECOMMENDED** on February 20, 2018.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

  A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); F̲ED̲. R. C̲IV̲. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

*[signature]*
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE